# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| ANGELIA MARIE RICH | § | |
| | § | |
| v. | § | Civil Action No. 4:19-CV-404 |
| | § | Judge Mazzant |
| COLUMBIA MEDICAL CENTER OF PLANO SUBSIDIARY, L.P. d/b/a MEDICAL CITY PLANO | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Opposed Motion to Dismiss and Compel Arbitration (Dkt. #6). Having considered the motion and the relevant pleadings, the Court finds that the motion should be granted.

### BACKGROUND

Plaintiff Angelia Marie Rich started working for Columbia Medical Center of Plano Subsidiary, L.P. d/b/a Medical City Plano ("Defendant" or "Medical City Plano") as a pathology secretary/transcriptionist on April 20, 2015. Plaintiff alleges that she reported violations of law involving confidential patient health information, and Defendant alleges that Plaintiff allowed a patient's medical record to be sent to an improper third party. Plaintiff was terminated on March 20, 2019.

Medical City Plano has an Employee Dispute Resolution Program ("EDRP"). Plaintiff appealed her termination through the EDRP. The process starts with Medical City Plano's Assistant Chief Operating Officer, then proceeds to a peer-review panel of five peer-level employees from affiliated facilities, and finally goes to Medical City Plano's CEO. (Dkt. #6, Exhibit 1 at p. 3). Every step of the appeal in this case upheld Plaintiff's termination. After the

appeal process, Plaintiff filed suit in this case alleging that she was terminated in retaliation for reporting violations of law under Texas Health and Safety Code Section 161.134.

However, Medical City Plano is an affiliate of HCA Healthcare. All affiliates of HCA Healthcare within the State of Texas use a Mandatory Binding Arbitration Policy. The Mandatory Binding Arbitration Policy states: "All disputes governed by the Mandatory Binding Arbitration Policy shall be submitted to final and binding arbitration to be conducted by an experienced arbitrator from the American Arbitration Association ("AAA") chosen by the employee and the company." (Dkt. # 6, Exhibit 2 at p. 2). All employees are required to review and acknowledge the Mandatory Binding Arbitration Policy at the outset of their employment at the same time they have to fill out paperwork for newly hired individuals. The employee can fill out the paperwork and review the policy by logging into an online portal using a unique employee ID and password. In the portal, the employee reviews and acknowledges several documents, including the Mandatory Binding Arbitration Policy. After reviewing all documents, the employee electronically acknowledges or signs an acknowledgement summary stating that she will abide by the policies listed. Plaintiff completed this process before starting employment with Medical City Plano.

Based on this set of facts, on August 19, 2019, Defendant filed the present motion compel arbitration (Dkt. #6). On September 3, 2019, Plaintiff filed a response (Dkt. #8). On September 10, 2019, Defendant filed a reply (Dkt. #9). No sur-reply was filed.

## LEGAL STANDARD

"The Federal Arbitration Act ("FAA") expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004).

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

When considering a motion to compel arbitration, the Court must address two questions. *Graves v. BP America, Inc.*, 568 F.3d 221, 222 (5th Cir. 2009) (citing *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). "First, whether there is a valid agreement to arbitrate, and second, whether the dispute in question falls within the scope of the arbitration agreement." *Id.* Concerning the first question of contract validity, the Court should apply "ordinary state-law principles that govern the formation of contracts." *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The second question of scope is answered "by applying the 'federal substantive law of arbitrability . . . .'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

**ANALYSIS**

Defendant argues that this case is appropriate for arbitration because there is a valid agreement to arbitrate and the dispute falls within the scope of arbitration. Plaintiff does not contest that there is a valid agreement to arbitrate or that the dispute falls within the arbitration agreement.[1] Plaintiff only contests that Defendant waived its right to assert the arbitration agreement. Defendant argues that it did not waive its rights to enforce the arbitration agreement.

---

[1] Plaintiff did not file a response to whether or not there was a valid arbitration agreement or whether the present dispute falls within the scope of the arbitration provision. Thus, the Court presumes that Plaintiff does not controvert the facts set out by Defendant and has no evidence to offer in opposition to the argument. LOCAL RULE CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion.").

The Mandatory Binding Arbitration Policy is, in relevant part, as follows:

Under the Mandatory Binding Arbitration Policy, both the employee and the Texas Affiliated Employer agree to give up any right either of them might have to a judge or jury trial regarding any issued governed by the Mandatory Binding Arbitration Policy. All disputes governed by the Mandatory Binding Arbitration Policy shall be submitted to final and binding arbitration to be conducted by an experienced arbitrator from the American Arbitration Association ("AAA") chosen by the employee and the company.

. . . .

Subject to the general requirement the claim must give rise to a legal cause of action that could be heard in court, the following claims must be submitted to arbitration:

- claims related to involuntary terminations, such as layoffs and discharges, demotions negatively affecting pay, and suspensions without pay

. . . .

- retaliation claims as recognized by applicable state or federal law[.]

There are two ways an employee can initiate arbitration with the Employer.

1. Within thirty (30) calendar days of receiving the written decision from the CEO or designee through Step 4, the employee must give written notice to the Human Resources Department that the employee wishes to proceed to binding arbitration; or
2. If the complaint involves the alleged violation of a state or federal law and the employee has otherwise complied with any requirements established by such state or federal law, the employee may give written notice to the Human Resources Department that the employee wishes to proceed to binding arbitration at any time as long as it is delivered with the applicable statute of limitations.

. . . .

Within fourteen (14) calendar days after receiving the employee's notice to proceed to binding arbitration, the Employer will request an arbitration panel for AAA. AAA will send to the employee and Employer a list of five arbitrators who are members of the applicable regional Employment Dispute Resolution Roster of the AAA that have hospital arbitration experience. This list also will contain information from AAA about each arbitrator.

> Within ten (10) calendar days after receiving the list, both the employee and Employer will meet, either in person or by telephone, to choose the arbitrator. Starting first with the employee, the employee and the Employer will alternatively cross off names from the list until only one arbitrator's name remains.

(Dkt. #6, Exhibit 2 at pp. 1–2, 5).

In this case, after Defendant terminated Plaintiff on March 20, 2019, Plaintiff sent an email to Jennifer Morris, the Vice President of Human Resources at Medical City Plano. (Dkt. #8, Exhibit 1; Dkt. #6; Exhibit 1). In the email to Morris, Plaintiff claimed that she was "allowed to proceed with arbitration as stated in the hand out [that was] distributed" and that the "Dispute" was her "wrongful termination" because she asserted she was accused of "incorrect violations." (Dkt. #8, Exhibit 1 at p. 1). She sought "[r]estitution and removal of termination." (Dkt. #8, Exhibit 1 at p. 1). That same day, Morris responded claiming that Plaintiff's complaint did "not involve violation of state or federal law by the facility" and therefore she was not entitled to arbitration "at th[at] point." (Dkt. #8, Exhibit 2 at p. 1). Plaintiff claims[2] that she sent another email to Morris on April 11, 2019, the same day the decision of the peer review panel was issued, notifying Morris of Plaintiff's appeal to the CEO, but requesting an immediate arbitration knowing the decision the CEO would render. (Dkt. #8 at p. 2).

On April 17, 2019, after the CEO's decision, Plaintiff again emailed Morris requesting immediate arbitration and acknowledging that a list of arbitrators would be sent to Defendant and it would provide those to Plaintiff. (Dkt. #6, Exhibit 4 at p. 2). Plaintiff claims that on April 24, 2019, Plaintiff sent another email to Morris, with no response, asking why she had not heard from the "corporate relations team." (Dkt. #8 at p. 2).[3] Plaintiff claims that she made two calls on April 25, 2019, to the human resources department: the first was made to Morris, with no response; and,

---

[2] Plaintiff does not cite any supporting documentation for this assertion.
[3] Plaintiff does not cite any supporting documentation for this assertion.

the second to Marissa Neill, HR Business Partner with Medical City Plano, who answered, and after investigation, informed Plaintiff that the request for arbitration had been sent to the corporate office.[4] On May 6, 2019, Plaintiff claims that she searched the internet to find out who to contact at corporate, made a call, and left a message with the department of Labor and Employment Counsel, but did not receive a call back.[5] Finally, Plaintiff and Defendant agree that, on May 20, 2019, Defendant's outside counsel contacted Plaintiff regarding the arbitration she requested for her termination. The Court addresses claims of waiver for communications prior to April 17, 2019 and the written communication on April 17, 2019.

### I. Prior to April 17, 2019

Plaintiff's first claim of waiver comes from not acting within fourteen days of the written notice sent on March 20, 2019 and/or April 11, 2019. Morris responded to the March 20 communication indicating that Plaintiff was not entitled to arbitration at that time, and she allegedly did not respond to the April 11 communication. At the time, Plaintiff had claimed that she had been wrongfully terminated asserting that incorrect violations of medical record disclosures had been assessed against her. Plaintiff did not add allegations, or at least notify Defendant of allegations, of retaliation pursuant to Texas Health and Safety Code § 161.134 that are asserted in this litigation until a later date.

As an initial matter, the Mandatory Binding Arbitration Policy states that there is a "general requirement [that] the claim must give rise to a legal cause of action that could be heard in court" before a claim is to be submitted to arbitration. (Dkt. #6, Exhibit 2 at p. 3). Texas employs the at-will employment doctrine, and there has not been an exception recognized for "incorrect violations." *See, e.g.*, *Darden v. Mario Sinacola & Sons Excavating, Inc.*, No. 4:17-cv-389, 2017

---

[4] Plaintiff does not cite any supporting documentation for this assertion.
[5] Plaintiff does not cite any supporting documentation for this assertion.

WL 4583777, at *2 (E.D. Tex. Sept. 20, 2017), *report and recommendation adopted by*, 2017 WL 4574583 (Oct. 13, 2017); *Gaumond v. City of Melissa, Tex.*, 227 F. Sup.2d 627, 631 (E.D. Tex. 2002) (citations omitted); *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 734–35 (Tex. 1985). Thus, challenging the reason for termination, under Plaintiff's at-will employment, did not result in a cause of action that could be heard in court.

Moreover, even if it did, the Mandatory Binding Arbitration Policy set out two ways for an employee to initiate arbitration. As the Court identified, Plaintiff's claims did not involve a violation of state or federal law at the time, which gives rise to one way to initiate the proceeding. (Dkt. #6, Exhibit 2 at p. 5). Thus, the other way applied to Plaintiff's claims on March 20 and April 11, 2019. As such, the time for Plaintiff to initiate arbitration was "[w]ithin thirty (30) calendar days of receiving the written decision from the CEO or designee through Step 4." (Dkt. #6, Exhibit 2 at p. 5). Thus, Plaintiff was required to complete the internal grievance process and could not bypass the CEO's decision merely because she knew what the result would be.

Accordingly, at that time, Morris's conduct surrounding the March 20, 2019 communication and April 11, 2019 communication did not result in a waiver.

**II.     April 17, 2019 Written Communication**

Plaintiff additionally argues that Defendant waived its ability to invoke the Mandatory Binding Arbitration Policy because it did not respond to Plaintiff's April 17, 2019 communication within fourteen days as required by the terms of the policy. Defendant asserts that the two-week delay in responding to the request did not result in an intentional waiver.

The FAA disfavors waiver such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense of arbitrability." *Moses*

*H. Cone Mem'l Hosp. v. Meury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "Waiver of an arbitration right must be intentional. Implying waiver from a party's actions is appropriate only if the facts demonstrate that the party seeking to enforce arbitration intended to waive its arbitration right." *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex. 1996) (citing *Merrill Lynch v. Eddings*, 838 S.W.2d 874, 879 (Tex. App.—Waco 1992, writ denied)). In such cases where litigation has already begun, wavier "will be found only when the party seeking to enforce the agreement substantially invoked the judicial process to the other party's detriment." *Id.* Thus, Plaintiff must show that, under this set of facts, Defendant intentionally relinquished its rights and that Plaintiff was prejudiced by that conduct. *See id.*

The Mandatory Binding Arbitration Policy states: "[w]ithin fourteen (14) calendar days after receiving the employee's notice to proceed to binding arbitration, the Employer will request an arbitration panel from AAA." (Dkt. #6, Exhibit 2 at p. 5). Plaintiff filed her written notice demanding arbitration on April 17, 2019. Under the terms of the Policy, Defendant should have requested an arbitration panel from AAA by May 1, 2019. Defendant did not respond until May 20, 2019, nineteen days after the deadline stated in the Policy. However, Plaintiff has not shown this conduct was an intentional relinquishment of Defendant's rights under the Mandatory Binding Arbitration Policy. There is no indication within this clause that a failure to get a panel within fourteen days will result in a relinquishment of their rights under the policy or that it would result in a waiver. Further, according to both Plaintiff and Defendant, the delay was not intentional but was instead the result of delay in processing from the human resources department to the in-house legal team and then to outside legal counsel. (Dkt. #8 at p. 3; Dkt. #9 at p. 5). There is no indication that the short delay was a result of intentional conduct on behalf of Defendants.

Moreover, Plaintiff does not show that she suffered any prejudice from the brief delay, as she is required to do under the law. Plaintiff acknowledges that prejudice is determinative on whether a waiver occurred. (Dkt. #8 at p. 5) (citing *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1162 (5th Cir. 1992)). Citing other circuits, Plaintiff asserts that "[p]rejudice may be found, for instance, in delay or by reason of extensive discovery." (Dkt. #8 at p. 6) (citations omitted). However, Texas courts have explained that delay alone is not sufficient to waive a party's rights under an arbitration provision. *See Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 898–99 (Tex. 1995); *Vesta Fire Ins. Corp. v. Emp'rs Reinsurance Corp.*, No. 3:05-cv-2404-P, 2006 WL 1506949, at *5 (N.D. Tex. May 31, 2006); *cf. Spain Hous. Oilers, Inc.*, 593 S.W.2d 746 (Tex. Civ. App.—Houston [14th Dist.] 1979, no writ) (holding a three year and eight month delay sufficient to demonstrate prejudice). Plaintiff filed suit on June 3, 2019, after receiving a response from Defendant on May 20, 2019. Thus, based on the timeline, Plaintiff knew that an arbitration would be forthcoming. Additionally, Plaintiff's statute of limitations would not run until September 16, 2019, 180 days after Plaintiff's termination. *See* TEX. HEALTH & SAFETY CODE § 161.134(h). Plaintiff's situation was not one where Plaintiff was in the dark and hoping to preserve her statute of limitations. Plaintiff chose to pursue an action in federal court despite the Defendant's intention to continue under the Mandatory Binding Arbitration Policy. Thus, it is hard to imagine what prejudice Plaintiff could have endured with no pending suit, no imminent threat of running her statute of limitations, and the possibility to arbitrate quicker than she could get a determination in court.

Therefore, the Court finds that Defendant did not waive its right to invoke the Mandatory Binding Arbitration Policy and, again, Plaintiff did not challenge that there was a valid arbitration agreement and that her dispute fell within the scope of the arbitration agreement. As such, the

Court finds it appropriate to compel arbitration. Because it is appropriate to compel arbitration, Defendant asks the Court to dismiss the case citing *FedMet Corp. v. M/V Buyalyk*, 194 F.3d 674 (5th Cir. 1999). The Fifth Circuit in *FedMet* stated:

> Although we understand that plaintiff's motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration. Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law.

*Fedmet Corp.*, 194 F.3d at 678 (citations omitted). Plaintiff did not respond to this contention. Because Plaintiff did not file a response to this argument, the Court presumes that Plaintiff does not controvert the facts set out by Defendant and has no evidence to offer in opposition to the argument. LOCAL RULE CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion."). As such, the Court agrees with the Defendant that the case should be dismissed.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Opposed Motion to Dismiss and Compel Arbitration (Dkt. #6) is hereby **GRANTED**. The case is hereby **DISMISSED WITHOUT PREJUDICE** and the parties are **COMPELLED** to arbitration. All relief not previously granted is hereby **DENIED**. The Clerk of the Court is hereby directed to close the case. Each party shall bear its own costs.

**SIGNED this 27th day of February, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE